## CAMPION *v.* CANADIAN PAC. RY. CO.

*(Circuit Court, N. D. Illinois. September 29, 1890.)*

CARRIER OF GOODS—LIABILITY FOR LOSS.

> Where a carrier, after informing the owner of goods delivered to it for transportation that they will be held at place of receipt till the freight charges are prepaid, ships the goods without payment, and without notice to the owner, it is liable for damages resulting from such premature shipment.

At Law.
*John S. Cooper*, for plaintiff.
*Walker & Eddy*, for defendant.

GRESHAM, J. Having determined to remove from Chicago to Seattle with her family, (two daughters,) the plaintiff, on May 14, 1888, visited the office of the defendant to arrange for the shipment of her furniture, books, pictures, clothing, and other household goods. The defendant's agent agreed to receive and forward the goods, and informed the plaintiff that from Chicago to St. Paul they would be carried over the Chicago, St. Paul & Kansas City road, thence to Vancouver over the defendant's road, and thence to their destination by the Northern Pacific Navigation Company. The defendant knew that the plaintiff desired to receive and care for her goods when they reached their destination, and that she expected to start on her journey that day. After delivering her

property at the freight depot of the Kansas City Company at Chicago, and receiving a memorandum receipt for it, the plaintiff went to the defendant's office, showed her receipt, and was informed that an agent of the defendent was at the freight office of the other company, expecting to meet her there. The plaintiff went to the latter office, and met an agent of the defendant in company with an agent of the other company, and was informed by them that her goods would not be forwarded until the freight charges, $105, were paid, the regulations of the defendant requiring payment in advance for carrying such property. Having but $75 with her, the plaintiff left, saying she would return in a day or two with money enough to pay the freight bill; but before leaving she handed the receipt to the defendant's agent, who promised to have a bill of lading ready for her. Two days later the plaintiff again called at the defendant's office, and informed a clerk or employe, he being the only person present, that she was detained by the illness of one of her daughters, and some business matter, and that her goods would have to remain in the freight house for the present. The employe said he supposed that would be satisfactory, and that he would inform the defendant's freight agent of her situation, which he did. The plaintiff then went to the freight office of the Kansas City Company, and informed its agent of the cause of her detention, who told her that, under the circumstances, her goods could remain where they were without storage charges. The following week the plaintiff again visited the defendant's office, and informed its agent that she was still detained at Chicago by the illness of her daughter; and some days later the plaintiff had an opportunity to ship her goods to Seattle over another line, at a lower rate, in a car which had been obtained by a friend, his goods not filling the car. The plaintiff accordingly went to the Kansas City Company's freight depot for her goods, and was for the first time informed by an agent that they had been forwarded the evening of the day she delivered them, and that he had not notified her of the fact when she called before, because he did not then know of the shipment. The plaintiff immediately went to the defendant's office and asked its agent if her goods had been forwarded, and, if so, why she had not been notified of the fact. The agent replied that it was true her goods had been shipped the day she delivered them at the other company's freight warehouse; that one of the defendant's agents in charge of such matters, on his own responsibility, had ordered the shipment; and that the defendant had not notified her of the fact because her address could not be found. The plaintiff then saw the latter agent, and told him she had given him her address, and had seen him put it on his file, and he replied that her address had been lost, and for that reason she could not be notified. The goods arrived at Seattle on May 30, and, no one appearing to receive them, they were stored in a warehouse, and six days later were destroyed by fire. The plaintiff testified that if she had known her goods had been forwarded she would have reached Seattle in time to receive them, and that when they were destroyed she believed they were still in Chicago.

If there had been no agreement or understanding that the goods should be held until the defendant's demand was complied with, the defendant would have been bound to forward them at once, or without unreasonable delay; but, having agreed to hold the goods until the charges were paid, it was a breach of the contract to forward them without notice to the plaintiff. She believed, as she well might, that her goods would not be forwarded until she complied with the defendant's demand, and that she could and would reach Seattle in time to care for them on their arrival. She was prevented from doing this by the neglect of the defendant to discharge a plain duty that it owed her. Her goods were destroyed 2,000 miles away, when, owing to the misleading conduct of the defendant, she supposed they were still at Chicago. If a carrier receives goods for transportation, agreeing to hold them until a future date, or until the happening of an event, and forwards them at once, damages resulting from a breach of the agreement may be recovered.

It was clearly the defendant's duty to hold the goods, or notify the plaintiff that it was willing to forward them, waiving prepayment of the carrying charges.

Finding and judgment for the plaintiff for $1,650.